**THE ULRICH LAW FIRM, PLC**
Walter A. Ulrich, Esq. (AZ State Bar No. 022734)
45 West Jefferson Street
14th Floor, Luhrs Tower
Phoenix, Arizona 85003
Tel.:  (602) 427-4027
Fax:   (602) 491-1996
Email: walter@ulrichlawfirm.com

Attorneys for Plaintiff
RAPOSO INTERNATIONAL ENTERPRISES, INC.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| RAPOSO ENTERPRISES, INC, a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>117 DEGREES, LLC an Arizona Limited Liability Company; HALE GLOBAL CAPITAL SOLUTIONS, LLC, an Arizona limited liability company; THOMAS HALE, an individual; SOUL JOURNEY, LLC a California Limited Liability Company; CHRISTINE AMES, an individual; IVY 95, LLC, a Arizona Limited Liability Company; IVY DAWSON, an individual; LEGENDS OF SPRING, LLC an Illinois Limited Liability Company; RICHARD BALLARD, and Individual; GOTTA GO, LLC, a Delaware Limited Liability Company; KAREN JEDEL, an individual; and DOES 1 through 10, inclusive<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>(1) **BREACH OF CONTRACT;**<br>(2) **EXPRESS CONTRACTUAL INDEMNITY;**<br>(3) **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>(4) **UNJUST ENRICHMENT;**<br>(5) **PROMISSORY FRAUD;**<br>(6) **CIVIL CONSPIRACY; AND**<br>(7) **UNFAIR BUSINESS PRACTICES**<br><br>**JURY DEMANDED** |

///

///

# COMPLAINT

1. Raposo Enterprises, Inc. hereby complains against 117 Degrees, Inc., Hale Global Solutions, Inc., Thomas Hale, Soul Journey, LLC, Christine Ames, Ivy 95, LLC, Ivy Dawson, Legends of Spring, LLC, Richard Ballard, Wendon Rock Marketing, LLC, Thomas Andrews, Gotta Go, LLC, and Karen Jedel, as follows:

## THE PARTIES

2. Plaintiff Raposo Enterprises, Inc. ("Raposo") is a Nevada Corporation with its principal place of business located at 1810 E Sahara Ave Ste 215, Las Vegas, NV, 89104, USA. Raposo is the assignee from Raposo International Enterprises, Inc (collectively referred to as "Raposo.")

3. Defendant 117 Degrees, LLC ("117 Degrees") is an Arizona Corporation with its principal place of business located in Phoenix, Arizona.

4. Defendant Hale Global Capital Solutions, LLC ("Hale Global") is an Arizona Corporation with its principal place of business located in Phoenix, Arizona.

5. Defendant Thomas Hale ("Hale") is an individual who resides in Scottsdale, Arizona.

6. Soul Journey, LLC ("Soul Journey") is a California limited liability company with its principal place of business in Paso Robles, California.

7. Christine Ames ("Ames") is an individual who resides in Paso Robles, California, and Ames owns Soul Journey.

8. Ivy 95 LLC ("Ivy 95") is an Arizona limited liability company with its principal place of business in Yuma, Arizona.

9. Ivy Dawson ("Dawson") is an individual who resides in Yuma, Arizona, and Dawson owns Ivy 95.

10. Legends of Spring, LLC ("Legends"), is an Illinois limited liability company with its principal place of business in Erie, Illinois.

11. Richard Ballard ("Ballard") is an individual that resides in Erie, Illinois,

and Ballard owns Legends.

12. Wendon Rock Marketing, LLC ("Wendon Rock"), is an Arizona limited liability company with its principal place of business in Gilbert, Arizona.

13. Thomas Andrews ("Andrews,") is an individual who resides in Gilbert, Arizona, and Andrews owns Wendon Rock.

14. Gotta Go, LLC ("Gotta Go"), is a Delaware limited liability corporation with its principal place of business in California.

15. Karen M. Jedel ("Jedel," and collectively with Gotta Go, Andrews, Wendon Rock, Ballard, Legends, Dawson, Ivy 95, Ames, Soul Journey, Hale, Hale Global, and 117 Degrees, "Defendants,") is an individual who resides in Encinitas, California, and Jedel owns Gotta Go.

16. Raposo is currently unaware of the true names and capacities of Does 1 through 10, inclusive, whether individual, partnership, corporation, unincorporated association, foreign individual, or entity, or otherwise, and therefore sues these Defendants by such fictitious names. After discovery, which is necessary to ascertain the true names and capacities of these Defendants, Raposo will amend the pleadings to allege the necessary identifying details. Raposo is informed and believes, and on that basis alleges, that at all material times, each of the Defendants, as well as Does 1 through 10, was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial assistance to the alleged activities, and in doing the things alleged, each was acting within the scope of such agency, service, employment, partnership, joint venture, representation, affiliation, or conspiracy, and each is legally responsible for the acts and omissions of the others.

**JURISDICTION, VENUE, AND APPLICABLE LAW**

17. This Court has jurisdiction over the Defendants under 28 U.S.C. § 1332 because Defendants regularly conduct business in Arizona and/or derive substantial

benefits and revenues from Arizona. The amount in controversy exceeds the sum or value of $75,000, exclusive of interests or costs.

18. Defendant 117 Degrees' contract with Plaintiff contained a forum selection clause setting any dispute to be brought in the state or federal courts located in Maricopa County.

## FACTS COMMON TO ALL ALLEGATIONS

### I.     Defendants' Illegal Scheme

19. Defendants 117 Degrees, Hale Global, and Thomas Hale (the "Hale Defendants") are in the business of providing illegal straw signors to defraud banking institutions. In sum, Defendants arrange for straw signors, here Jedel, Gotta Go, Andrews, Wendon Rock, Ballard, Legends, Dawson, Ivy 95, Ames, and Soul Journey (the "Straw Signor Defendants"), to execute agreements with financial institutions. The Hale Defendants then orchestrate a mechanism for merchants to have funds deposited into that straw account. The straw signors have no connection to the merchant and do not perform any services related to the business.

20. In this scheme, which the Hale Defendants have been perpetrating for years, the straw merchants essentially lend their information to the Hale Defendants. The Hale Defendants then take that information and set up a fake business that will pass muster for the financial institution's vigorous underwriting to believe that the straw signor has a bona fide business and is engaged in the business set forth on the banking application.

21. But this is actually an elaborate scheme to defraud financial institutions into extending a bank account.

22. Until recently, regulators, like the Federal Trade Commission ("FTC"), have been unaware of the pervasiveness of these schemes. But recently, the FTC has begun enforcement actions on entities and individuals engaged in schemes similar to those perpetrated by Defendants.

23. The Hale Defendants designate themselves as executors and signors of the bank account so that the Hale Defendants control all funds deposited and withdrawn from that account.

24. The Hale Defendants enter into agreements with the straw signors, and did so here with the Straw Signor Defendants, under which they pay the straw signors' flat fees or percentages of their profits. The Hale Defendants collect all of these fees directly from the bank account that it establishes on behalf of the straw signors.

25. The Hale Defendants also enter into agreements with merchants, like Raposo, purportedly to assist those merchants in obtaining bona fide legal means to additional merchant processing volume, meaning that they are able to process more orders from their customers.

26. The Hale Defendants do not, however, inform their customers that their model is entirely illegal and violates 18 U.S.C. § 1029 (factoring), 18 U.S.C. § 371, § 1029(b)(2) (conspiracy), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1344 (bank fraud), or that similar schemes have been and currently are being prosecuted by the Federal Trade Commission ("FTC").

II. **The Parties Agreement and Performance**

27. On or about July 25, 2019, 117 Degrees and Raposo entered in the Services Agreement ("Agreement") under which 117 Degrees agreed to provide its straw signor services to Raposo. See attached as "Exhibit A" a true and correct copy of the Agreement.

28. Before the parties executed the Agreement, Hale represented to Raposo that Defendant's services were legal and legitimate. Defendants advertise their services online, detailing their processes and methods as a stoic front to elevate their purported legitimacy. See attached as "Exhibit B" a true and correct copy of the 117 Degrees Website.

29. At the time Hale made these statements to Raposo, he knew they were

false. Hale knew that his business was fraudulent and that it violated a multitude of regulations.

30. Since Hale led Raposo to believe that his business was legitimate, Raposo agreed to the Agreement.

31. Under the Agreement, 117 Degrees was required to set up all of the necessary agreements and vendors to allow Raposo to process transactions on behalf of its customers.

32. 117 Degrees and Hale also orchestrated the execution of credit card processing agreements on behalf of the straw merchants, here, the Straw Signor Defendants. The Agreement also set forth that 117 Degrees would supervise, manage, and remain responsible for all of the Straw Merchants.

33. 117 Degrees would collect fees by aggregating the payments from the Straw Merchants and would then collect its fees form those aggregated funds.

34. Raposo is informed and believes and thereon alleges that the Straw Signor Defendants were aware of Defendants Hale Global's, 117 Degrees' and Mr. Hale's scheme, and that they all conspired together in an effort to defraud Raposo.

35. Hale also used his shell corporation, Hale Global, to enter into agreements with the Straw Signor Defendants for them to serve as shell corporations with Raposo and other merchants.

36. Raposo was unaware that Defendants' businesses were not legitimate. Raposo reasonably relied on Hale's statements that his business was formed and governed in compliance with applicable law and the applicable rules and regulations that govern the electronic payments industry, including without limit, the Card Brand Rules promulgated by Visa, MasterCard, AMEX, etc. and that the Straw Signor Defendants were similarly compliant.

37. Raposo later learned that Defendant's scheme mirrored similar conspiracies that have been prosecuted by the FTC.

38. Raposo discovered that the use of a straw merchant amounts to the

commission of credit card laundering, commonly referred to as bank fraud and wire fraud, punishable under United States Code, Title 18, §§ 1343-1344.

39. From the FTC's perspective, using straw signers to facilitate access to the payments' ecosystem constitutes an unfair and deceptive business practice that violates Section 5 of the FTC Act and is very much on its radar.

40. Additionally, Defendants' scheme also violates various federal and state criminal laws. Where the practice affects interstate or foreign commerce, the federal courts have jurisdiction. The Department of Justice Financial Crimes Enforcement Network ("FinCEN") regards such factoring activities as a variation on money laundering and may pursue merchants and processors alike in appropriate cases. Depending on the particular facts of the credit card laundering scheme, such conduct may variously violate 18 U.S.C. § 1029 (factoring), 18 U.S.C. § 371 or § 1029(b)(2) (conspiracy), 18 U.S.C. § 1343 (wire fraud), or 18 U.S.C. § 1344 (bank fraud).

41. Before Raposo learned that Defendants had lured it into this scheme, Raposo performed under the Agreement and processed transactions under Defendants' relationship with the Straw Signor Defendants and had funds deposited into the Straw Signor Defendants' bank accounts.

42. During performance, Defendants' failed to provide the agreed upon service, and over $700,000 was frozen in the Straw Signor Defendants' accounts.

43. Raposo is informed and believes and thereon alleges that Defendants have access to these funds but have refused to release these funds.  Or, in the alternative, have failed to recoup those funds.

44. Raposo is further informed and believes and thereon alleges that the Hale Defendants routinely and systematically perpetrate this scheme and simply take the money.

45. Here, Defendants and/or their vendors have held over $700,000 of Raposo's money and have refused to return it or provide visibility or tracking on the

location and status of those funds.

## FIRST CAUSE OF ACTION

**(Breach of Contract)**

**(Against 117 Degrees)**

46. Raposo repeats and realleges all paragraphs above with the same force and effect as if fully set forth herein.

47. On or about July 25, 2019, Raposo and 117 Degrees entered into the Agreement.

48. Raposo has performed all terms, conditions, covenants, and promises required of it under the Agreement, except those that have been discharged, excused, waived, or prevented.

49. 117 Degrees has materially breached the Agreement as set forth above.

50. As a direct and proximate result of 117 Degrees' breaches of the Agreement, Raposo has sustained and continues to sustain damages, including but not limited to, loss of the benefits due under the Agreement, and other fees, costs, and expenses, in an amount to be shown according to proof at trial in excess of the jurisdictional minimum.

51. Raposo is entitled to an award of attorneys' fees and costs pursuant to A.R.S § 12-341.01.

## SECOND CAUSE OF ACTION

**(Express Contractual Indemnity)**

**(Against 117 Degrees)**

52. Raposo repeats and realleges all paragraphs above with the same force and effect as if fully set forth herein.

53. As a term and condition of the Agreement, 117 Degrees agreed to indemnify and hold Raposo harmless from any and all losses, claims, expenses, and

liabilities that Raposo might sustain at any time as a consequence of 117 Degrees' failure to comply with the terms of the Agreement.

54. By the terms of the Agreement, Raposo is entitled to recover the legal fees and expenses it to date incurred and will continue to incur so long as this matter remains unresolved. Raposo does not know the full amount thereof at this time and will move to amend this complaint to state the amount when it becomes known to it, or on proof thereof.

55. By reason of the foregoing, Raposo is entitled to be indemnified in an amount to be shown according to proof at trial in excess of the jurisdictional minimum.

56. Raposo is entitled to an award of attorneys' fees and costs pursuant to A.R.S § 12-341.01.

### THIRD CAUSE OF ACTION

**(Breach of the Covenant of Good Faith and Fair Dealing)**

**(Against All Defendants)**

57. Raposo repeats and realleges all paragraphs above with the same force and effect as if fully set forth herein.

58. In the alternative to other claims, implied in every contract is a covenant of good faith and fair dealing that neither party will engage in any act or omission that is intended or has the natural tendency to deprive the other party of the full benefit of its bargain. This covenant is implied into the Agreement between Raposo and Defendants and imposes upon Defendants a duty not to engage in acts or omissions that would frustrate Raposo's enjoyment of the rights and benefits owed or reasonably expected under the Agreement.

59. Defendants throughout the term of the Agreement assisted and benefited from the straw merchant scheme to set up illegal accounts to process with Raposo. This and Defendants' actions as set forth above breached this implied

covenant of good faith and fair dealing.

60. Defendants' breaches have caused harm to Raposo in that Raposo was not able to receive the extent of the benefits for which it bargained for under the Agreement as more fully described above.

61. As a direct and proximate result of Defendants' breaches of the covenant of good faith and fair dealing, Raposo has been damaged, as further described above, in an amount to be shown according to proof at trial in excess of the jurisdictional minimum.

62. Raposo is entitled to an award of attorneys' fees and costs pursuant to A.R.S § 12-341.01.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)
### (Against all Defendants)

63. Raposo repeats and realleges all paragraphs above with the same force and effect as if fully set forth herein.

64. Raposo hereby pleads that in the alternative, no express agreement exists between the Parties related to Raposo's use of services set up by Defendants. Defendants, both prior to the execution of the Agreement, and during the performance under the Agreement, willfully concealed the true nature and of Defendants' business and Defendants' intent to steal Raposo's money. Had Defendants not intentionally withheld such information from Raposo both during the underwriting process and while the Agreement was in effect, Raposo would not have agreed to use Defendants' services.

65. Defendants have unjustly and/or wrongfully retained a substantial benefit at the expense and detriment of Raposo. Raposo has an inadequate remedy at law for Defendants' unjust enrichment.

66. By reason of the foregoing, Defendants have been unjustly enriched at

the expense of Raposo, and Raposo has been damaged as described above, plus prejudgment interest at the prevailing legal rate, as well as any other damages, in an amount to be shown according to proof at trial in excess of the jurisdictional minimum.

67. Defendants will continue to be unjustly enriched to the substantial detriment and prejudice of Raposo and a constructive trust should be placed on all sums due and owing to Raposo unless and until Raposo is fully and justly restored, subject to proof and/or equity.

## FIFTH CAUSE OF ACTION
### (Promissory Fraud)
### (Against all Defendants)

68. Raposo repeats and realleges all paragraphs above with the same force and effect as if fully set forth herein.

69. Defendants' above-described acts and omissions amount to the commission bank fraud and wire fraud, punishable under United States Code, Title 18, §§ 1343-1344.

70. From the Federal Trade Commission's ("FTC") perspective, using straw signers to facilitate access to the payments' ecosystem constitutes an unfair and deceptive business practice that violates Section 5 of the FTC Act and is very much on its radar.

71. Additionally, Defendants' scheme violates various federal and state criminal laws. Where the practice affects interstate or foreign commerce, the federal courts have jurisdiction. The Department of Justice Financial Crimes Enforcement Network ("FinCEN") regards such factoring activities as a variation on money laundering. Depending on the particular facts of the credit card laundering scheme, such conduct may variously violate 18 U.S.C. § 1029 (factoring), 18 U.S.C. § 371 or § 1029(b)(2) (conspiracy), 18 U.S.C. § 1343 (wire fraud), or 18 U.S.C. § 1344

(bank fraud).

72. Specifically, Defendants failed to disclose information/documentation to Raposo regarding the illegal load-balancing conspiracy perpetrated by Defendants.

73. In or around July 2019, during the time that Defendants and Raposo negotiated the Agreement, Defendants failed to represent to Raposo:

   a. Defendants' primary business was to provide individuals that had absolutely no relationship or function other than to lend their identity; and

   b. Defendants would provide all documents and manage all of the business relationships.

   c. Defendants were engaged in illegitimate business practices.

74. At the time Defendants, through its authorized representatives, and each of them, made the above-referenced material misrepresentations and/or omissions to Raposo, which Defendants knew were false and/or had no reasonable ground for believing same were true and/or made the statements with the intent to induce Raposo to take the actions, set forth herein, to Raposo's substantial financial detriment.

75. Defendants surreptitiously, and without Raposo's consent or knowledge, proceeded with acts and omissions as set forth above in the preceding allegations and according to proof, which were contrary to what Defendants had represented and agreed.

76. Raposo reasonably relied on Defendants' material misrepresentations, statements, promises, and/or omissions, did not know of Defendants' fraud and took the material actions set forth herein and trusted that Defendants were acting in good faith, just as Raposo was acting in good faith. Raposo discovered Defendants' fraud recently, and it continues to discover Defendants' fraud.

77. As a direct and legal result of Defendants' fraudulent misrepresentations and material omissions, Raposo has suffered actual,

consequential, and special damages in excess of excess of the jurisdictional minimum, plus interest until the full balance due and owing is paid, subject to proof. Specifically, as more detailed above, but for Defendants' fraudulent misrepresentations and material omissions, Raposo would not have agreed to work with Defendants.

78. By making the above fraudulent misrepresentations and material omissions, Defendants intended to design a scheme where they could steal Raposo's reserve funds. Said misconduct was despicable and committed with a complete and total disregard for the rights of or detriment to Raposo, and Raposo therefore is entitled to punitive damages in an amount according to proof at time of trial.

79. Raposo is entitled to an award of attorneys' fees and costs pursuant to A.R.S § 12-341.01.

## SIXTH CAUSE OF ACTION
### (Civil Conspiracy)
### Against All Defendants

80. Raposo repeats and realleges all paragraphs above with the same force and effect as if fully set forth herein.

81. Defendants agreed with one another to commit fraud against Raposo. Raposo is informed and believes and thereon alleges that this agreement is in writing.

82. Defendants, or at least two of them, were all aware and knowing participants in the above-described acts and omissions, were aware of each parties' role, and were aware of the plan prior to agreeing with Raposo and intended to defraud Raposo.

83. Each Defendant made a willful act towards the commission and in furtherance of the scheme as set forth above.

84. Said misconduct was despicable and committed with a complete and total disregard for the rights of or detriment to Raposo, and Raposo therefore is

entitled to punitive damages in an amount according to proof at time of trial.

### SEVENTH CAUSE OF ACTION

**(Unfair Business Practices, Ariz. Rev. Stat. § 44-1522 et seq.)**

**(Against all Defendants)**

85. Raposo repeats and realleges all paragraphs above with the same force and effect as if fully set forth herein.

86. As more fully set forth throughout above and as will be proven at trial, Defendants have engaged and continue to engage in unlawful, unfair, and fraudulent business practices, including but not limited to, unfair competition and other unfair, deceptive, and misleading business practices.

87. Defendants have acted, and continue to act, in violation of various laws governing their businesses, including but not limited to, Ariz. Rev. Stat. §§ 44-1522 et seq. and California Business and Professions Code §§ 17200, 17203, and 17500 et seq., among other things, as set forth above and according to proof.

88. Plaintiff is informed and believes and based thereon alleges that Defendants will continue to engage in unlawful, unfair, and fraudulent business practices unless and until the Court orders the Defendants to cease and desist.

89. As a direct, proximate, and foreseeable result of Defendants' unlawful, unfair, and fraudulent conduct, as alleged above, Raposo has suffered pecuniary harm and has been damaged in excess of $700,000.00, according to proof at trial. Plaintiff and other members of the public will continue to suffer substantial harm and injury if the Court does not provide restitution and injunctive relief, as requested herein. Plaintiff and other members of the public do hereby seek all remedies against Defendants for such damages and for restitution and injunctive relief.

///

///

///

**PRAYER FOR RELIEF**

WHEREFORE, Raposo for relief against Defendants and the Doe Defendants, jointly and severally, as follows:

1. For full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of their unlawful and fraudulent business acts or omissions;
2. For compensatory damages in excess of the jurisdictional minimum, and interest thereon, according to proof at trial;
3. For punitive damages according to proof at time of trial;
4. For all costs and expenses, including attorneys' fees;
5. For prejudgment interest at the maximum legal rate; and
6. For such other and further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Raposo hereby demands a trial by jury on all claims set forth in the Complaint. Dated this 25th day of May, 2021

THE ULRICH LAW FIRM, PLC

 */s/ Walter A. Ulrich*
Walter A. Ulrich
*Attorney for Raposo Enterprises, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2021, I caused to be electronically filed the foregoing document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail, electronic mail, or by other means permitted by the court rules.

Dated: May 25, 2021

.